WILLIAM KANE MFG. CO. v. ECONOMY IRON WORKS.

(District Court, E. D. Pennsylvania. September 11, 1914.)

No. 1129.

PATENTS (§ 328*)—INFRINGEMENT—IMPROVEMENT IN BOILERS.
    The Kane patents, No. 620,931 and No. 686,900, for an improvement in steam and hot water boilers, held not infringed.

In Equity. Suit by the William Kane Manufacturing Company against the Economy Iron Works. On final hearing. Decree for defendant.

Cyrus N. Anderson, of Philadelphia, Pa., for plaintiff.
John E. McDonough, of Chester, Pa., for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DICKINSON, District Judge. This case concerns the proprietary rights conferred by the grant of letters patent No. 620,931 and No. 686,900, and now owned by the plaintiff by assignment.

The defenses are the usual ones. In the view we have taken, it is unnecessary to refer to any of them, except the denial of infringement. The claims are for an improvement in steam and hot water boilers. The patentee sought to make all the units of heat of avail by inducing, or at least promoting, an active circulation. It is claimed for him that in this he succeeded. Whether the result was accomplished in just the way he had planned to accomplish it is by no means clear. If, however, the means of producing that result are present in his device, to be observed, and they are of his devising, the right to their exclusive use belongs to him, even if he failed to recognize the true principles of their operation, or to accurately enunciate the principle, or, indeed, ascribed the result to the wrong cause. His right springs from what he did, and not from his description of how it was done. What he claims to have done is to promote circulation by the means which he adopted.

The true principle of the operation of the means which he provided has been shown to be that of having tubes of different lengths, whereby the water in the longer ones is relatively superheated and passes through them, returning through the shorter ones. The word "length" describes this difference. The patentee uses this word, but it would seem that what he really had in mind was not "length" but "altitude." The impression is given that the thought in his mind was of a series of tubes, some longer than others, and therefore projecting further into the dome or chamber above the crown plate. The ends of the longer ones would thus be considerably above the crown plate and of the shorter ones just reaching it. The drawing accompanying the application emphasizes this. It is true that it is stated to be only of a preferred form, but it is difficult to escape the conclusion that the patentee thought the merit of his contrivance consisted in the fact of this longer protrusion into the upper dome, and that the promoted circulation was due to this. The practical construction, however, while retaining the length of the longer tubes, eliminated the feature of the altitude of their ends by bringing the ends of all the tubes down to about the level of the crown plate. The differing length feature was retained by having the longer ones bent and the shorter ones straight. This brought the whole length of each tube within the drum below the dome, and it is easy to understand how by this circulation was stimulated.

The very capable expert, who testified for the plaintiff, brought the design as reduced to practice within the design as described in the application by taking the latter construction of boiler and then drawing the longer tubes into the drum until the ends of all the tubes were on a level. If this were done, the longer tubes would be bent or curved, and the shorter ones would be straight, and you have the boiler construction as reduced to practice. The position taken is that such a boiler would answer to the claims of the patent, because it would **have all the features of the claims, including the differing length**

of tubes. It would differ from the drawing accompanying the application only in that the tubes in the one would be shown as all having the same altitude of ends, the longer ones being bent and the shorter ones straight, and in the other as all straight, the longer ones protruding further into the dome space.

As the latter construction is given in the application as preferential only, it does not so limit the claims as that they cannot be construed to cover the former. Moreover, the claim is for length of tube. We cannot assume that the patentee meant "altitude," and both forms of construction possess tube length. This, it is claimed, gives to the patentee the right of protection against the unwarranted use of his idea of inducing circulation by causing the water to pass up the long tubes and down the short ones by the superheating of the long tubes, and brings us to the question of infringement.

The fact is found against the plaintiff. Its claim of infringement is based upon a mistaken idea of what the defendant had done. There is in both makes of boiler a similarity of construction. This they have in common with all makes. The principle of construction of the defendant's boiler in its circulation features, as the plaintiff supposed it to be, is that the water was heated in a floating water chamber suspended by the boiler tubes over the gas and passed up through the superheated long bent tubes, returning to the water chamber through the short straight tubes. The annular water leg or jacket enveloping the drum played no part in the circulation, because the water there was dead slack water, entirely shut off from the circulating current. This was based upon the supposed fact that the raw water was introduced through a pipe passing through the water jacket and connected up with the water chamber, and that the construction was such that the water in the jacket had no connection with the water chamber, except through the boiler tubes. If this were the fact, then, of course, the current of circulation would be from the water chamber up through the longer tubes and back through the short tubes, and the water in the jacket would have played no part in the circulation. So sure of this was the plaintiff that its expert rested the plaintiff's whole case on this fact, and expressed himself as willing to stand or fall by it.

It is now admitted that the fact is otherwise than as plaintiff supposed it to be. The water pipe referred to leads, not from outside the boiler directly into the water chamber, but into the water jacket. This pipe part of the construction is therefore not a water chamber, as in plaintiff's boiler, but a conduit pipe, and the circulation is from the water jacket, through the conduit pipe, and up the tubes into the jacket. The activity of circulation is dependent upon the temperature of the water in the jacket being relatively low. The whole principle of operation is a different one from that of the plaintiff's boiler, and there is no infringement. As the plaintiff's expert admits this conclusion, there is no occasion to vindicate it. The plaintiff's whole case turns on the defendant's construction of boiler being as the plaintiff supposed it to be constructed. The construction is not as it was supposed to be, and the plaintiff should be willing to abide the result of this finding.

When the defense was presented, the defendant's expert described its boiler as so constructed that the water in the jacket was in flow with the water in the pipe over the gas burners, and the principle of its operation was in a current of circulation from the jacket, through the pipe, and up the tubes. There was no cross-examination. The plaintiff then recalled its expert in rebuttal. He testified that the defendant's expert was wrong in his description of defendant's boiler, but admitted that, if he were right as to the fact, he was right in his conclusion of no infringement. Infringement, therefore, by the admission of the parties, turned upon the fact. The fact is with the defendant's expert, and the conclusion follows. The testimony referred to was given when plaintiff's expert was called in rebuttal:

Rudolph M. Hunter, recalled (page 97 of stenographer's notes): After stating that he and defendant's expert differed as to the fact referred to, and giving the different versions of the fact (at page 104), he makes the statement that, if he were wrong as to the fact of construction, he would be wrong in his conclusion, and it follows that, if defendant's expert was right as to the fact, he would be right in his conclusion. Speaking of defendant's idea of the construction and his own, he uses this language (page 105):

"That would change the whole character of the testimony which I gave, if I was not right."

Again, referring to his view that the circulation in the defendant's make of boiler was the same as that in the plaintiff's patented boiler, and reiterating his understanding of the construction of defendant's boiler, he says:

"No water circulates from the annular water leg into the floating tubular water chamber."

He was then interrogated as follows:

"By the Court: Q. I received, of course, that same impression from the testimony in chief. Supposing, however, it be the fact that there is a circulation such as Mr. Berry stated it to be, then what? A. If that circulation was, as he says it was, from the leg, we would then not have the benefit of the long and short tubular passages, and I am free to confess that it would change my opinion which I have expressed, because I understand that the essential part of this invention is in the provision whereby circulation may be had within the floating water chamber by reason of the tubes by which it is suspended. We do not show any water leg, and we do not have any means of circulation from such a water leg. (Page 122.)"

After some colloquy as to what the drawings show, the witness' testimony continued:

Q. "But they [the defendants] are making something more than drawings. They are making boilers. A. That is true. If a boiler was here, it would be self-evident. Q. What I cannot understand is how you two men, the man I assume you to be, and I know Mr. Berry to be, disagree about a thing of that kind. I understand from you and from him now that the difference between you is on that one little simple fact: Does that pipe extend from the outside source of supply right through the water jacket into the lower chamber, or is there an opening into the water jacket, an opening from the water jacket into the lower chamber? That is the proposition, is it not? A. That is the proposition. (Page 123.)"

The witness then expressed his absolute confidence that he was right as to the fact of the construction, and that he was not afraid, but wholly content, to rest the question of the correctness of his conclusions and those of the defendant's expert upon the fact as it would be determined by an inspection of the boiler. Arrangements were made for the inspection of the boiler by counsel for plaintiff. The inspection was made, and the fact is admitted that the plaintiff's expert was wrong and the defendant's expert right. We feel, therefore, constrained to draw the conclusion which it was admitted should be drawn in accordance with the finding of this fact.

It is true that the plaintiff's expert subsequently modified his view by the statement that, although there was a water connection between the annular water leg or water jacket and the floating water chamber or box, there might nevertheless be a circulation from the water chamber up through the long boiler tubes and down through the short boiler tubes back into the water chamber.

In addition, however, to the admission already pointed out, the witness had stated, and reiterated the statement, that the essential feature of the plaintiff's device consisted in the fact of the circulation being from the floating water chamber through the long pipes and back again through the short pipes, and that the merit of the combination which the plaintiff had patented was in a floating water chamber suspended by tubes, above which was the steam chamber, and that the introduction into the defendant's device of this annular water leg or jacket was a mere modification of the form, and not a difference in the construction, because the circulation must still be from the water chamber up through the long pipes and down again through the short pipes to the water chamber, and that the water in the jacket formed and could form no part in the operation of circulation, because the water in the water leg was absolutely dead water; having no means of communication with the water chamber, and therefore played no function in the operation of the boiler, beyond acting purely as a water jacket and absorbing some of the heat which would otherwise be conducted to the outside casing of the boiler; in other words, its whole function would be to keep the outside casing of the boiler cooler than it would otherwise be, thereby saving fuel.

As the feature, which is thus admitted to be an "essential" common feature of the two boilers to render the defendant's boiler an infringement of the plaintiff's patent, is now admitted to be absent from the defendant's boiler, we again cannot escape the compulsion to find no interference. How in weighing the evidence the scales might have inclined, had the plaintiff's evidence been different from what it was, cannot now be surmised. Taking the evidence which is before the court and the testimony as it was given, the weight is overwhelming with the defendant. Every element of construction in each of these makes of boilers is admittedly old. It is most vigorously asserted by the defendant that there is no invention in the way in which these old elements are brought together in the plaintiff's make of boiler. It is just as vigorously urged that, whatever merits the plaintiff's make of boiler may possess, the boiler construction not only possesses no

patentable novelty, but that the features of it which contribute to its success are not present in the make of boiler described in the application on which the letters patent were granted, and are not covered by the claims of the patent.

For the reason already stated, we have withheld going into either of these grounds of defense, and expressly refrain from making any finding as to whether defendant's make of boiler shows invention within the meaning of the patent laws, or whether the claims cover the features which are asserted to be patentable. The whole merit of the plaintiff's design is conceded to be in the combination by which the steam-producing results are achieved, and as this claimed combination does not exist in the defendant's make of boiler, no infringement can be convincingly asserted to have been committed.

The plaintiff's bill is accordingly dismissed, with costs to the defendant, and a decree for this purpose may be submitted.